UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**CLINT A NORENBERG,**

Debtor.

Case No. **15-61171-7**

*MEMORANDUM OF DECISION*

At Butte in said District this 21st day of July, 2016.

In this Chapter 7 case creditor Elska, Inc. ("Elska") filed a Motion to Dismiss for abuse under 11 U.S.C. § 707(b) on April 15, 2016, on the grounds that erroneous statements regarding Debtor's non-filing spouse's income and expenses on Debtor's Forms 122A-1 and 122A-2 (Chapter 7 Means Test Calculation) resulted in an erroneous determination by Debtor that the presumption of abuse under § 707(b) does not arise. Debtor Clint A. Norenberg ("Clint" or "Debtor") filed an objection. A hearing on Elska's Motion was held after due notice at Missoula on June 2, 2016. Debtor appeared and testified at the hearing, represented by attorney Edward A. Murphy of Missoula. Elska was represented by attorney Marcel A. Quinn of Kalispell. Elska's Exhibits ("Ex.") 1, 2(redacted), 3, 4, and an unmarked transcript ("Tr.") of a Rule 2004 examination of Debtor's non-filing spouse Christie R. Norenberg ("Christie"), were admitted without objection. At the conclusion of the hearing the Court granted the parties time to file briefs, which have been filed and reviewed by the Court together with the record and applicable law. This matter is ready for decision. Elska's Motion to Dismiss will be denied by separate

Order for the reason that Debtor's "current monthly income" ("CMI") defined by 11 U.S.C. § 101(10A) does not include income of Debtor's nonfiling spouse which is not paid on a regular basis for the household expenses of the Debtor or the Debtor's dependents.

Elska's Motion to Dismiss for abuse under § 707(b) is a core proceeding under 28 U.S.C. § 157(b)(2). This Court has jurisdiction over this contested matter under 28 U.S.C. § 1334(a). This Memorandum of Decision includes the Court's findings of fact and conclusions of law.

At issue is whether Elska satisfied its burden of proof to show that the granting of relief to the above-named Debtor would be an abuse of the provisions of Chapter 7 under § 707(b) when the Debtor omitted income received by his non-filing spouse from his Means Test calculation. The Court concludes that Elska failed to satisfy its burden of proof by a preponderance of the evidence.

## FACTS

Debtor Clint Norenberg is married to Christie R. Norenberg ("Christie"). They have one child, and Christie is expecting their second child. Clint is engaged in a landscaping business with his father. Clint and his father are indebted to Elska. Christie is employed as a teller at First Interstate Bank in Kalispell. She is not indebted to Elska. Clint testified that Christie's financial affairs are "absolutely" separate from his. No evidence exists in the record to the contrary; his testimony that their finances are separate is corroborated by Christie's deposition testimony. Tr., pp. 12, 16-17, 18, 19.

Christie owns an interest in a family entity identified as the "Sullivan Family Montana, Inc." ("Sullivan Family Entity") from which she receives periodic royalty income, usually in late November or early December. Ex. 2; Tr., p. 11. Ex. 2 states that amount of Christie's royalty

income was $12,396 on their 2014 tax return.  Clint testified that Christie received a royalty check from the Sullivan Family Entity in the approximate amount of $10,000 in 2015.   Christie testified at her Rule 2004 examination that she received a check for $10,000 from the Sullivan Family Entity in November or December of 2015.  Tr., p. 11.  Ex. 3 are bank statements of Christie's checking account at First Interstate Bank.  Clint testified that when Christie receives funds from the Sullivan Family Entity by check she deposits it immediately into her separate account.  He does not know how she spends the royalties.  Page 7 of Ex. 3 shows a $8,000 deposit to Christie's checking account on December 2, 2015, and a $2,500 withdrawal on the same date.  The deposit slip on page 8 of Ex. 3 shows that she withdrew $2,000 when she deposited $10,000 on December 2, 2015 for a net deposit of $8,000, which is reflected on page 7.  Christie testified that she used the $10,000 for family expenses.  Tr., p. 11.

 Christie has three credit cards in her name, which she uses to pay for family expenses only, and not for any non-family expenses.  Tr., pp. 7, 8, 16-17.  In addition, she testified that she has taken draws throughout 2015 from her account at American Funds and received income dividends, all of which were reinvested in the account.  Tr., pp. 13-15.  Clint has no interest and is not a beneficiary in Christie's American Funds account.  Tr., p. 12.

 Clint filed a voluntary Chapter 7 bankruptcy petition on December 21, 2015.  He marked the box "Yes" at item 16 in response to the question:  "Are your debts primarily consumer debts."  Debtor filed his Schedules and Statements on January 22, 2016, and on the same date filed his completed Official Form 122A-1 ("Chapter 7 Statement of Your Current Monthly Income") and Form 122A-2 ("Chapter 7 Means Test Calculation").  Ex. 1.  Clint testified that he does not know the definition of CMI.

3

Form 122A-1 includes instructions between Lines 1 and 2 as follows: "Fill in the average monthly income that you received from all sources, derived during the 6 full months before you file this bankruptcy case, 11 U.S.C. § 101(10A)." Ex. 1. Following those instructions and counting backward from the December 21, 2015, petition date, the six month period for the instant Debtor begins June 1, 2015, and ends Monday, November 30, 2015. At Line 2 of Form 122A-1 Debtor listed his gross wages or salary as $3,768.67, and under Column B of Line 2 listed Christie's gross wages as $2,590.20. No other income was listed in Part 1.

Line 7 of Form 122A-1 ("Interest, dividends, and royalties") lists "$0.00" for both Debtor and his non-filing spouse. Ex. 1. Part 1 does not include the $10,000 from the Sullivan Family Entity which Ex. 3 shows was deposited into Christie's checking account on December 2, 2015, which Christie used for family expenses (Tr., p. 11), and does not include her draws or dividends from American Funds which were reinvested.

Ex. 4 is the year-end statement for Christie's account at American Funds. Ex. 4 shows on page 1 a beginning total value on 1/1/2015 of $131,432.85, and a year end value of $103,261.30. Her American Funds account is divided among two funds. On September 9, 2015, Christie received redemptions in the amounts of $4,500 from each of her American Funds. Clint testified that he could not recollect what Christie did with the $9,000 in total redemptions. Christie testified that Clint is not a beneficiary and has no ties to her American Funds account at all. Tr., p. 12.

Pages 2 and 3 of Ex. 4 show that Christie received periodic income dividends from her American Funds within the six month period before the December 21, 2015, petition date. Elska contends that Christie received a total of $832.27 in American Funds dividends. Clint and

4

Christie both testified that she elected to have the dividends reinvested with American Funds instead of receiving them in checks. No evidence exists in the record that Christie's redemptions and reinvested dividends from her American Funds account were used for family or household expenses.

Ex. 1 states at page 2, Line 11, that Debtor's CMI, including Christie's salary, totaled $6,358.87. Part 2 multiplied that number by 12 months for a result at Line 12b of $76,306.44. Line 13 states the Montana mean family income for a household of 3 as $64,729. Because Line 12b is more than Line 13, Line 14b states: "The presumption of abuse is determined by Form 122A-2."

Form 122A-2 starts at page 3 of Ex. 1. From the $6,358.87 CMI at Line 1, deductions are made. The instructions for Line 3 state: "Adjust your current monthly income by subtracting any part of your spouse's income not used to pay for the household expenses of you or your dependents." At Line 3 Debtor deducted a total of $207.82 consisting of "Wife's IRA contribution" ($97.82) and "Wife's debts" ($110). Debtor did not include at Line 3 the $10,000 royalties which Christie received from the Sullivan Family Entity, or the dividends and redemptions she received from American Funds.[1]

Line 3 lists $110 described as "Wife's debts." Elska argues that Christie paid for family expenses with that $110 on her credit card. Christie testified that all of her credit card charges were for household expenses. Tr., pp. 7-8. Debtor's Form 122A-2 then deducted from his CMI expenses for healthcare, housing and utilities, transportation expenses for two vehicles, taxes and

---

[1] Christie's royalties, redemptions and dividends were not included at Line 7 of Form 122A-1. If they had been listed at Line 3 of Form 122A-2 it would have resulted in an excessive and erroneous reduction.

5

childcare using IRS categories, then deducted additional expenses in the form of health insurance and debt payments for Debtor's two vehicles.

Part 3 of Form 122A-2 calculated Debtor's monthly disposable income for 60 months by subtracting his total deductions ($7,148.58) from his adjusted CMI ($6,151.05). The result on page 8 of Ex. 1is a negative monthly disposable income of $997.53, which multiplied by 60 at Line 39d resulted in a negative amount, (-$59,851.80), and prompted the Debtor to check box 1 of Form 122A-2 ("There is no presumption of abuse"). At Line 43 of Debtor's Form 122A-2 he marked the box "No" indicating that he has no special circumstances that justify additional expenses or adjustments of CMI for which there is no reasonable alternative. Debtor repeated under direct examination that he has no special circumstances.

Debtor submitted both forms on Ex. 1 under penalty of perjury. Under direct examination by Elska Debtor admitted that he did not include Christie's income from the Sullivan Family Entity. He also admitted that his health insurance entry at line 25 of Ex. 1 of $898.95 is an error because it includes his IRA contribution. His health insurance expense is $706.95.

Debtor has not amended his Forms 122A-1 and 122A-2 to include Christie's royalties and dividends or correct the other errors. He testified that he did not try to find out information about Christie's royalties and dividends before he filed. Ex. 1. Debtor testified that his household expenses and health insurance expenses will increase when his second child is born and their day care expenses will double; Christie will miss about eight weeks from work, which will exceed her allowed maternity leave so their income will decrease.

Elska filed its Motion to Dismiss this case for abuse under § 707(b) on April 15, 2016,

6

based upon what it calls erroneous entries regarding Debtor's income and expenses on his Form 122A-2. After correcting for royalties and dividends received by Christie, credit card debts which were used to pay household expenses, and reducing expenses for child care and health insurance expenses, Elska argued that the Debtor's disposable monthly income for 60 months exceeds $12,475 on Line 40 of Form 122A-2, which gives rise to a presumption of abuse under § 707(b)(2)(A)(i)(II). Further, Elska argues, the Debtor acknowledged on Form 122A-2 at item 43 that he has no special circumstances that justify additional expenses or adjustments to his CMI income for which there is no reasonable alternative under § 707(b)(2)(B)(i).

## DISCUSSION

Elska moves to dismiss under § 707(b) for abuse, contending that abuse by this Debtor is shown under both the subjective and objective tests, citing *In re Sullivan,* 370 B.R. 314 (Bankr. D. Mont. 2007). This Court has discretion to dismiss a consumer case for abuse under § 707(b). *In re Cavanagh*, 250 B.R. 107, 112, 18 Mont. B.R. 351, 358 (9th Cir. BAP 2000). Section 707(b) provides in relevant part:

> (1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter.....
>
> (2)(A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of –
>> (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $7,475, whichever is greater; or
>> (II) $12,475

7

§ 707(b).

This Court discussed § 707(b) in *Sullivan*:

> The dismissal or conversion of Chapter 7 bankruptcy cases is governed by 11 U.S.C. § 707(b). The Chapter 7 case of an individual debtor, whose debts are primarily consumer debts, may be dismissed under § 707(b)(1) if a bankruptcy court finds, after notice and hearing, "that the granting of relief would be an abuse of the provisions of" Chapter 7. The determination as to whether "abuse" exists in a given case is determined by applying the objective test found at § 707(b)(2) and/or the subjective test found at § 707(b)(3). The objective test of § 707(b)(2) is commonly referred to as the Means Test. The Means Test of § 707(b)(2) creates a presumption that abuse exists when a debtor's income is greater than the median income for his or her household size in the domiciliary state and his or her income less applicable expenses (as calculated pursuant to uniform standards) is sufficient to pay over a 60 month period at least the lessor of (1) the greater of 25% of the debtor's nonpriority unsecured claims or $6,000.00,[2] or (2) $10,000.00.[3] Explained in another way, the Means Test sets forth the congressionally determined calculations of a debtor's income and expenses, which, depending upon the result obtained from completing the calculations, creates a presumption that the bankruptcy filing is an abuse of Chapter 7 or permits the Chapter 7 case to proceed.

*Sullivan*, 370 B.R. at 318; *see also In re Padilla*, 222 F.3d 1184, 1193-94 (9th Cir. 2000); *In re Stiff*, 17 Mont. B.R. 474, 476 (Bankr. D. Mont. 1999).

Section 707(b)(2)(A)(ii) sets forth the analysis for determining whether a court shall presume abuse, based on the debtor's CMI reduced by certain claims and expenses specified under the National Standards and Local Standards issued by the Internal Revenue Service ("IRS"). § 707(b)(2)(A)(i). Official Forms 122A-1 and 122A-2 embody the objective test under § 707(b)(2)(A) & (B). *See Sullivan*, 370 B.R. at 318.

Section 707(b)(7) provides in pertinent part a requirement which must be met before a

---

[2]Subsequent amendment has raised the $6,000 amount to $7,475.

[3]The $10,000 figure has been raised by amendment to $12,475. § 707(b)(2)(A)(i)(II).

motion to dismiss for abuse under § 707(b)(2) may be filed:

>  (A) No judge, United States trustee (or bankruptcy administrator, if any), trustee, or other party in interest may file a motion under paragraph (2) if the current monthly income of the debtor, or in a joint case, the debtor and the debtor's spouse, as of the date of the order for relief, when multiplied by 12, is equal to or less than –
>
>  \` \* \* \* \*
>
>  (ii) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals ....

Section 707(b)(7) is described as setting a "safe harbor amount," and "the means test is applied only if the debtor's CMI is above the safe harbor amount." *Blausey v. U.S. Trustee*, 552 F.3d 1124, 1132 (9th Cir. 2009) (per curiam). Section 707(b)(7) places a threshold burden of proof on the moving party.

CMI is defined at § 101(10A) of the Code:

The term "current monthly income" –

>  (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on –
>
>  (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
>  (ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
>
>  (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, . . . .

9

§ 101(10A); *Blausey,* 552 F.3d at 1132.

CMI is calculated by averaging the debtor's monthly income during a 6-month look-back period which consists of the six full months preceding the filing of the bankruptcy petition's filing. § 101(10A)(i); *Hamilton v. Lanning*, 560 U.S. 505, 510 (2010).

The debtors in *Blausey* filed a joint chapter 7 case. The Ninth Circuit held that Deann Blausey's private disability insurance benefits were included in their CMI and therefore in the means test. *Blausey*, 552 F.3d at 1134. The instant case, by contrast, is not a joint case.

Elska argues that, after correcting Debtor's errors regarding Christie's income from royalties and dividends, her credit card expenses which paid for household expenses, overstated child care, and health insurance, Debtor's Means Test calculation results in a presumption of abuse. Debtor denies there is abuse and opposes Elska's motion to dismiss. Debtor asks that, if the Court finds abuse, it give the Debtor the opportunity to convert the case to Chapter 13.

One of the largest single components of Christie's income at issue is the $10,000 royalty check she received from the Sullivan Family Entity. Elska does not contend that the Debtor has any interest in the Sullivan Family Trust, but it argues that the entire $10,000 royalty amount is income for the relevant time period. Alternatively, Elska proposes that the Court prorate the $10,000 to $833/month in additional income of Christie under a "common sense" approach.

Elska cites in support *In re McSparran*, 410 B.R. 664, 668-69 (Bankr. D. Mont. 2009). *McSparran* was a chapter 13 case dealing with the disposable income requirement of 11 U.S.C. § 1325(b)(1)(B) and a debtor who was a resident of California, which is a community property state. 410 B.R. at 668. Clint is a Chapter 7 Debtor and a resident of Montana, which is not a community property state. *Id.*

10

Elska cites Christie's Rule 2004 testimony that she used the $10,000 royalty check for family expenses, Tr., p. 11. What Elska failed to prove, however, is that Christie's royalty income was derived during the relevant 6-month period of § 101(10A)(A)(i).

Debtor argues that the 6-month period for determining CMI under § 101(10A) began on June 1, 2015, and ended on November 30, 2015 and, thus, his nondebtor spouse's receipt of the $10,000 dividend and her deposit of the dividend on December 2, 2015, shown by Ex. 3, was outside the 6-month period and the $10,000 dividend was properly omitted from CMI. Debtor calls Elska's argument that Christie received the dividend check before December 2, 2015, "pure speculation," and argues that Elska could have asked Christie about the exact date she received the $10,000 check but did not, so is not entitled to an assumption that the evidence would weigh against Debtor.

Debtor filed a Schedule I showing his current income, so the 6-month period of § 101(10A)(A)(i) applies. The evidence is undisputed that Christie received the $10,000 royalty from the Sullivan Family Entity in a single payment. Ex. 3. To prorate that payment during the 6-month period preceding the date of commencement of the case, as urged by Elska, would be to ignore the 6-month period defined by § 101(10A)(A)(i). "It is well established that when the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." *Blausey*, 552 F.3d at 1132, quoting *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). In the instant case the 6-month period ended November 30, 2015, and began June 1, 2015. Income derived after the 6-month period but before the petition date may be omitted from CMI under § 101(10A)(A)(i). That may work against Elska's purpose in showing abuse, but that disposition is

11

not absurd and is not a reason to ignore the 6-month period and prorate the $10,000 royalty over the 6 months. *Lamie,* 540 U.S. at 534.

Ex. 3, pp. 7 and 8, shows the deposit and deposit slip for Christie's $10,000 royalty dated December 2, 2015. Elska argues that Clint and Christie testified that she received the royalty in November or December. However, Ex. 3 is Elska's own evidence and, as a bank record, is more specific and has more probative weight than Clint's and Christie's uncertain testimony.

Elska asks this Court to presume that Christie received the $10,000 royalty check before December 1, 2015, based upon the Debtor's failure to prove when Christie received it. A party's failure to produce evidence, which under the circumstances would be expected, can lead to an inference that the evidence would not have buttressed a party's position or indeed would have undercut it. *See Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 174 (1973); *see also N.L.R.B. v. Advance Transp. Co.*, 965 F.2d 186, 195 (7th Cir. 1992), quoting *P.R. Mallory Co. v. NLRB*, 400 F.2d 956, 959 (7th Cir.1968), *cert. denied*, 394 U.S. 918, 89 S.Ct. 1191, 22 L.Ed.2d 452 (1969). Elska is not entitled to that inference. Clint testified that Christie's finances are absolutely separate from his. Christie's Rule 2004 transcript corroborates that their finances are separate. They have separate bank accounts and credit cards and, in relation to her American Funds account, Clint is not even her beneficiary, "and it's not going to get changed until all this is settled." Tr., p. 12.

Based on the evidence of their separate finances this Court would not expect Clint to have specific knowledge of when or how Christie received the royalty from the Sullivan Family Entity. In contrast, Elska compelled Christie's attendance and testimony at a Rule 2004 examination. Elska questioned Christie under oath and compelled production of her bank records. Elska has

the threshold burden of proof under § 707(b)(7); it did not ask Christie about the date and manner by which the Sullivan Family Entity delivered the royalty check to her. The record does not show whether Christie received the royalty check in the mail, or when, or whether it was hand delivered. Absent an evidentiary foundation to support Elska's position that Christie received the check before December 1, 2015, this Court is unwilling to speculate that she received the royalty check from the Sullivan Family Entity before December 1, 2015. *See, e.g., In re Stansell*, 395 B.R. 457, 462 (Bankr. D. Idaho 2008). Ex. 3 shows that the royalty check was deposited into Christie's account on December 2, 2015. Based on that evidence, the Court finds that the $10,000 royalty check was derived after the 6-month period of § 110A(A)(i) and, thus, is not included in Debtor's CMI for his Means Test under § 707(b).

  The next contested items at issue are Christie's draws and dividends from her American Funds account. Elska argues that the $823.27 in dividends should be considered current monthly income. Debtor argues that the dividends were reinvested and not paid for household expenses of Debtor or Debtor's dependents and should not be included in Debtor's CMI.

  Elska further argues that the $9,000 in redemptions received by Christie from American Funds should be deemed used for household purposes since the Debtor failed to establish grounds for a marital adjustment. Debtor argues: that the $9,000 in redemptions were his nondebtor spouse's mutual funds which are separate from his finances; and that he had no access to those funds and does not know what she did with them. Debtor distinguishes the instant case from a case cited by Elska under chapter 13, *In re DeThample*, 390 B.R. 716 (Bankr. D. Kan. 2008), because Christie's mutual fund redemptions were not from a 401(k) or IRA, but rather converted Christie's property from one form to another, i.e., cash.

In *McSparran,* the debtor omitted his spouse's income in completing Form B22C. 410 B.R. at 668. The Court noted that §§ 1322(d)(1) and (2) and 1325(b)(4) required use of the combined monthly income of a debtor and debtor's spouse. *McSparran*, 410 B.R. at 668. The Court discussed when a "marital adjustment" may be made:

> As a result of the unexplained omission of his spouse's income, Form B22C states at Parts I and II that the Debtor is a below median income debtor and the applicable commitment period is 3 years. The combined current monthly income of the Debtor and Debtor's spouse, however, must be used in Parts I of Form 22C. *See* 11 U.S.C. § 1322(d)(1) and (2) and 11 U.S.C. § 1325(b)(4). Under Part II of Form 22C a marital adjustment may be made if Debtor contends that the calculation of the applicable commitment does not require inclusion of the non-filing spouse's income because such income is not paid on a regular basis for household expenses of the Debtor or Debtor's dependents pursuant to 11 U.S.C. § 101(10)(A). Debtor failed to include his wife's income in Part I and made no marital adjustment in Part II. Debtor has the burden of proof under § 1325(a), and failed to explain the omission of his wife's income or to establish any marital adjustment, if appropriate. Such omission is material in determining the applicable commitment period and disposable income; the Court concludes that the Trustee's first objection is well taken and it is sustained and confirmation is denied.

410 B.R. at 668-69.

In a chapter 13 case in Idaho, the court explained how a marital adjustment is made: "In the case of debtors who are married at the time their petition is filed, the Form adequately addresses this point by instructing debtors to include all of the income of their spouses, and then by later instructing them to remove (i.e., "adjust") whatever portion of the non-filing spouse's income that is not regularly contributed to the debtor's household prior to determining the applicable commitment period." *Stansell*, 395 B.R. at 462.

In discussing CMI of a nondebtor, a leading bankruptcy commentator writes:

> Current monthly income is defined to include any amount paid by any entity *toward the household expenses* of the debtor or the debtor's dependents *on*

14

> *a regular basis*. Thus, it clearly does not include all income of nondebtor household members. Amounts not used for household expenses of the debtor or debtor's dependents, are not included. In particular, if the spouse is not a joint debtor or a dependent of the debtor, amounts used for the spouse's expenses are not included. To include such income of a nondebtor spouse would be to force him or her to pay debts of the debtor spouse, perhaps to the detriment of the nondebtor spouse's own creditors.

2 COLLIER ON BANKRUPTCY ¶ 101.10A (Alan N. Resnick & Henry J. Sommer, eds., 16th ed., 2013).

Elsewhere COLLIER further discusses CMI and explains how the adjustment is made on the form applicable for the safe harbor and means testing in a chapter 7 case:

> The language concerning the debtor's spouse's income is problematic if the case is not a joint case. The definition of "current monthly income" includes only income that the debtor receives, or in a joint case the debtor and the debtor's spouse receive. By definition, then a nondebtor spouse has no current monthly income.
>
> * * * *
>
> Official Form 122A-1, promulgated to implement the means test, appears to take the position that the income of the nondebtor's non-separated spouse should be added to the debtor's income for purposes of section 707(b)(7), in that line 11 directs the debtor to state the total of both spouses' incomes, even if all or part of the nondebtor spouse's income does not fit within the definition of current monthly income. Although the nondebtor spouse's income not devoted to the household expenses of the debtor or dependents of the debtor is subtracted in line 3 of Official Form 122A-2 for other means test purposes, the inclusion of the income will require some debtors whose current monthly income to complete Official Form 122A-2 nonetheless, unless they affirmatively assert that the forms are contrary to the language of the statute.

6 COLLIER ON BANKRUPTCY, ¶ 707.04[3][b].

The burden of proof in the instant Chapter 7 case is on the moving party, Elska, under § 707(b)(7), not the Debtor. Elska asked Christie at her Rule 2004 examination if she used her $10,000 royalty from the Sullivan Family Entity for family expenses and she answered "Yes."

Tr., p. 11. Elska did not ask Christie when it had the chance whether she used the redemptions and dividends from American Funds for household expenses. Elska is not entitled to an inference, and its failure to offer evidence on her use of her American Funds redemptions and dividends weighs against its satisfying its burden of proof.

On the Debtor's side, no evidence exists in the record that Christie used dividends awarded to her by American Funds for household expenses of the Debtor or Debtor's dependents. The evidence shows that all of Christie's dividends were reinvested in her American Funds accounts. No evidence exists as to what Christie did with the $9,000 in redemptions from her American Funds on September 3, 2015. Elska examined Christie under oath, but simply failed to ask her about how she spent or used the redemptions. Because Elska failed to satisfy its burden of proof on whether or not the redemptions were paid on a regular basis for the household expenses of the Debtor and his dependent, the Court need not address whether the redemptions were income, or rather as Debtor contends simply a conversion of Christie's assets from one form to another.

It can be argued, based on the excerpt quoted above from COLLIER, ¶ 707.04[3][b], that the Debtor failed to complete Form 122A-1 correctly because he failed to list Christie's American Funds redemptions and dividends. That error is insufficient to conclude abuse, however, because in the absence of any evidence from Elska that those items were paid on a regular basis for the Debtor's household expenses, following COLLIER the Debtor would simply have subtracted those items in Line 3 of Form 122A-2. COLLIER, ¶ 707.04[3][b]. Debtor's failure to complete Form 122A-1 correctly is insufficient evidence of abuse when he would have subtracted the items from Form 122A-2.

16

The next item at issue is the $110 reduction of CMI on Line 3 of Form 122A-2 for "Wife's debts." This item refers to Christie's payments of her credit card debts. Elska argues that the $110 should be included in the Means Test calculation because Christie admitted she used her credit cards to pay for household expenses. Debtor argues that even if Christie paid household expenses with credit cards it is not within the scope of § 101(10A)(B).

The plain language of § 101(10A)(B) "includes any amount paid by an entity other than the debtor, or a regular basis for the household expenses of the debtor or the debtor's dependents . . . ." The only exceptions from "any amount" are specified later in § 101(10A)(B) and do not include household expenses paid for with a nonfiling spouse's credit card. The $110 reduction of CMI on Line 3 should be removed because Christie testified that she paid for "family things, family bills" with her credit cards. Tr., p. 7.

Next, Elska argues that the Debtor overstated daycare expenses of $700 at Line 22, based on Elska's calculation of 261 weekdays per year less 10 federally recognized holidays or 251 days, which works out to $655.11 per month in daycare expenses at $32/day instead of $700. Debtor argues that Line 21 calls for the total amount Debtor pays for childcare, including babysitting, daycare, nursery and preschool. The Court agrees with the Debtor. Line 21 of Form 122A-2 calls for total childcare, not just daycare. Christie agreed with Clint's testimony about day care costs. Tr., p. 9. Elska offered no evidence that Debtor's $700 monthly childcare cost on Line 21 of Form 122A-2 is incorrect. No adjustment to that entry is appropriate based on the evidence.

With respect to health insurance costs, Elska argues that Debtor's reported $898.95 on Line 25 of Form 122A-2 includes contributions to Clint's IRA, and his health insurance costs should be reduced to $706.95, a difference of $192. Debtor's counsel acknowledged that error at

17

the hearing.

As a result of the above, no material change is needed to Debtor's Form 122A-1. Christie's American Funds redemptions and dividends arguably could have been included on Line 7, but they would have been subtracted on Line 3 of Form 122A-2 because they were not shown to be paid on a regular basis by Christie for the household expenses of the Debtor or Debtor's dependent. The result would have been a complete offset and inclusion of those items on Form 122A-1 would not have changed the result in Part 2, which already concluded that the presumption of abuse is determined by Form 122A-2.

As for Form 122A-2, two changes are required which flow throughout the form. The first change requires removal of $110 for "Wife's debts" on Line 3, because that refers to credit card payments by Christie for household expenses. That change increases CMI on Line 4 and Line 39a to $6,261.05. The second change requires replacing $898.95 on Lines 25, 32, and 38 with $706.95. As a result of these two changes, the total deductions on Lines 38 and 39b are reduced to $6,956.58; and the difference between adjusted CMI ($6,261.05) and total deductions ($6,956.58) becomes a negative number (-$695.53) on Line 39c. Multiplying that negative number by 60 on Line 39d equals -$41,731.80. Since -$41,731.80 is less than $7,475, the same box would be filled in on Line 40 as the Debtor filled in concluding that "There is no presumption of abuse." Under the objective test of § 707(b)(2)(A)(i), this Court concludes there is no presumption of abuse.

Elska also seeks dismissal under the subjective test described in *Sullivan*, 370 B.R. at 320-21, based on the "totality of the circumstances" and Clint's ability to pay his creditors when considering Christie's dividends and royalties. Elska argues that Debtor's family earns far in

18

excess of Montana's median family income, and that he has disposable income and the ability to pay creditors, including Elska.

Debtor argues that the subjective test does not provide a basis to find abuse in filing this case. Debtor contends that Christie is not liable under Montana law for Debtor's guarantee of the business loan from Elska and that Christie's income or property should not be considered grounds to find abuse under the totality of the circumstances since she is not a debtor in this case. Debtor further argues that his expenses will increase with the birth of their second child and Christie's income will decrease since she expects to miss work in excess of her available maternity leave.

In *Sullivan*, this Court noted that "a debtor's ability to pay is still an important factor under § 707(b)(3), notwithstanding the means test of § 707(b)(2)." 370 B.R. at 320-21. *Sullivan* is distinguishable from the instant case, however, because in that case Mark and Diana Sullivan were joint debtors, while in the instant case Christie is a nondebtor. Above, the Court discusses at length Christie's royalty income and redemptions and dividends from American Funds. The Court's conclusion that they are not CMI in this Chapter 7 case is the same under the subjective test as under the objective test.

Christie has kept her finances substantially separate from Clint's. She did not enter into a personal guarantee of Clint's business debt to Elska. The evidence all shows that he has limited knowledge of and limited access to Christie's assets. She contributes much of her income to paying household expenses of the Debtor and Debtor's dependents, but the evidence does not show any willingness by Christie to pay Clint's creditors, or that Clint has access to her assets. Without Christie's assets and income, the evidence in this case does not show that the Debtor has the ability to pay a substantial portion of his debts or to fund a chapter 13 plan as the debtors did

in *Sullivan*. 370 B.R. at 323.

Another distinction of this case from *Sullivan* is that the Sullivans intentionally omitted substantial amounts of debt from their schedules, failed to make any attempt to amend their schedules once it came to light that they were inaccurate and attempted twice to discharge large amounts of debt. *Sullivan*, 370 B.R. at 323. Elska offered no evidence that Clint omitted debts from his Schedules. After considering the evidence, since no evidence exists that Clint has the ability to pay a portion of his unsecured debt in a chapter 13 plan without his nondebtor spouse's income and assets and since no evidence exists that he omitted debts from his Schedules and failed to amend, this Court finds and concludes that the Debtor did not file his petition in bad faith, that the totality of the circumstances of the Debtor's financial situation does not demonstrate abuse, and that dismissal under the subjective test of § 707(b)(3) is not warranted.

**IT IS ORDERED** a separate Order shall be entered denying Elska's Motion to Dismiss filed on April 15, 2016.

_____
Honorable Ralph B. Kirscher
Chief U.S. Bankruptcy Judge